**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UTICA MUTUAL INSURANCE, a/s/o TREDYFFRIN/EASTTOWN SCHOOL DISTRICT,**<br><br>        Plaintiff,<br><br>    *v.*<br><br>**WELLS FARGO BANK, N.A., et al.,**<br><br>        Defendants. | **CIVIL ACTION**<br><br><br>**No. 25-5867-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                          **June 9, 2026**

This case involves a lot of pointing fingers over who is to blame for a counterfeit/forged

check that was never delivered to a behavioral services organization.  While there is certainly

blame to go around, we cannot find it lays at the feet of Defendants JP Morgan Chase Bank N.A.

("Chase Bank") or Pennsylvania Local Government Investment Trust ("PLGIT").  This action

has been brought by Utica Mutual Insurance ("Utica" or "Plaintiff"), as subrogee of the

Tredyffrin/Eastown School District ("TESD"), and it brings claims for negligence, conversion,

and strict liability against Defendants Wells Fargo Bank N.A. ("Wells Fargo") and Chase Bank,

and claims for negligence and breach of contract against Defendant PLGIT.  (Doc. No. 12.)

Chase Bank and PLGIT move to dismiss all claims (Doc. Nos. 32, 34), which Plaintiff opposes

(Doc. No. 35, 43).  For the reasons below, the motions to dismiss are granted.

**I.      FACTUAL BACKGROUND**

PLGIT was established in 1981 as a common law trust to provide Pennsylvania local

governments, school entities, political subdivisions, and municipal authorities with a means to

pool their funds for temporary investment.  (Doc. No. 12 at ¶ 6; Doc. No. 34-3 at 6.)  TESD is an

investor in PLGIT, and, in connection with this investment, PLGIT provides TESD with check writing services. (Doc. No. 12 at ¶ 35; Doc. No. 34-3 at 6.)

On, or about January 18, 2024, TESD issued a check, ending in x277, to a third-party vendor, CCRES, in the amount of $365,158.02, for services provided. (Doc. No. 12 at ¶ 14.) CCRES is an organization that provides behavioral health services for children in Chester County. (*Id.* at ¶ 15.) This check was drawn from TESD's Wells Fargo investment account with PLGIT. It was allegedly mailed to CCRES's address but CCRES never received the check. (*Id.* at ¶ 16; Doc. No. 34-3 at 6.) Instead, the check was intercepted by an allegedly unknown individual. (Doc. No. 12 at ¶ 17.) This "unknown individual" forged the check and withdrew the funds from Wells Fargo payable to "Kalissa LaFoucade." (*Id.* at ¶ 18.) The counterfeit/forged check was then deposited into Ms. LaFoucade's bank account at Chase Bank. (*Id.* at ¶ 19.) According to Plaintiff, Wells Fargo and Chase Bank never examined the counterfeit check prior to issuing payment and before monies were withdrawn from TESD's Wells Fargo account and deposited into Chase Bank. (*Id.* at ¶¶ 20, 21.) Had they examined the counterfeit check, the banks would have discovered that the check was counterfeit/forged and lacked numerous security features both on the face/front of the check and on the back of the check. (*Id.* at ¶¶ 22, 23.)

After the counterfeit/forged check was deposited at Chase Bank, TESD discovered that CCRES had not cashed the check. (*Id.* at ¶ 24.) TESD alerted Wells Fargo of the suspicious activity, and the Tredyffrin Township Police Department began an investigation to locate the missing funds. (*Id.* at ¶ 25.) The Police Department determined that the check was deposited in Ms. LaFoucade's bank account at Chase Bank. (*Id.* at ¶ 26.) Detective Michael Cermignano informed Chase Bank of his belief that the counterfeit check was "negligently and

2

inappropriately" deposited into Ms. LaFocade's bank account, and that the funds "should be frozen and no further release of funds should be made." (*Id.* at ¶ 27.)  Despite this directive, Chase Bank allegedly closed the account with the stolen funds and then issued a check for the remaining balance—which was more than $300,000.00—to Ms. LaFoucade. (*Id.* at ¶ 28.)  Ms. LaFoucade then deposited these funds at a Bank of America branch. (*Id.* at ¶ 29.)

To date, TESD maintains that Wells Fargo has not refunded the money that it "negligently and carelessly" paid out to Ms. LaFoucade. (*Id.* at ¶ 30.)  As a result, Utica issued a check for $365,158.02 pursuant to the contract of insurance in effect between Utica and TESD. (*Id.* at ¶ 31.)  Utica asserts that due to this payment, Utica is subrogated to all claims TESD has against Wells Fargo[1] (*Id.* at ¶ 32.)  Utica asserts that "[t]he instrument at issue was a 'payable through' draft[2], which Wells Fargo contends is evident on the face of the instrument." (*Id.* at ¶ 33.)

Utica further contends that "it was PLGIT's responsibility to determine whether the instrument was payable or should be rejected." (*Id.* at ¶ 34.)  Based on PLGIT's published policies and documents, Utica claims that "PLGIT was required to appoint a person from PLGIT responsible for reviewing and approving or rejecting 'payable through' drafts presented against TESD's account.  PLGIT failed to reject the draft as fraudulent." (*Id.* at ¶ 36.)  Due to Wells

---

[1] The Amended Complaint only states that "Utica Mutual is subrogated to all claims TESD has against Defendant <u>Wells Fargo</u>" but does not mention Chase Bank or PLGIT (Doc. No. 12 at ¶ 32 (emphasis added).)  And as noted *infra* n.4, it is PLGIT who attached its contract with TESD to its motion to dismiss—not Utica.  Based on this contract, the Court can infer that Utica, as a subrogee, brings the claims against PLGIT.  But, as to Chase Bank , Utica has not described any relationship between TESD and Chase Bank that would give Utica, as subrogee, standing to bring claims against Chase Bank.  *See* Section IV.A.3.

[2] A payable through draft, often used by businesses, offers additional security, immediate fund transfers, and more minimal processing procedure than a standard check.

Fargo's[3] "negligence, and/or carelessness, as well as commitment of several violations of the Pennsylvania Uniform Commercial Code" Utica believes that TESD has been wrongfully deprived of its property.  (*Id*. at ¶ 37.)

As a result of these actions, Utica, as subrogee of TESD, brings this lawsuit.

## II.    PROCEDURAL HISTORY

On September 2, 2025, Plaintiff initiated this action against Defendant Wells Fargo in the Montgomery County Court of Common Pleas.  (Doc. No. 1.)  On October 13, 2025, Plaintiff removed the case to this Court, pursuant to 28 U.S.C. § 1332 and § 1441.  (*Id.* at 2.)

On October 20, 2025, Wells Fargo answered the Complaint.  (Doc. No. 7.)  Then, on November 19, 2025, Plaintiff filed a Motion for Leave to File an Amended Complaint to add Defendants Chase Bank and PLGIT (Doc. No. 10), which the Court granted on November 24, 2026.  (Doc. No. 11.)

After Plaintiff filed its Amended Complaint (Doc. No. 12), both Chase Bank and PLGIT filed motions to dismiss.  (Doc. Nos. 32, 34.)  Plaintiff opposes these motions (Doc. No. 35, 40), which are now ripe for resolution.

## III.    LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[3] At the conclusion of the factual background section, Plaintiff's Amended Complaint states: "[a]s a result, and due to Defendant Wells Fargo's negligence, and/or carelessness, as well as committing several violations of the Pennsylvania Uniform Commercial Code, Plaintiff TESD has been wrongfully deprived of its property." (Doc. No. 12 at ¶ 37.)  Oddly, Plaintiff has also asserted negligence claims against Defendants Chase Bank and PLGIT, while, here, in this section of the Amended Complaint, it posits liability to Wells Fargo only.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks and alterations omitted). Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, because Plaintiff brings a claim for breach of contract against PLGIT, the Court may consider the applicable contract between TESD and PLGIT, the Information Statement and Check Writing Authorization ("CWA"), in reviewing PLGIT's motion.[4]  (*See* Doc. No. 34-5.)

## IV.    DISCUSSION

The Court finds that all claims against Chase Bank and PLGIT must be dismissed. We address their motions to dismiss in turn below.

### A.    Chase Bank's Motion to Dismiss

Plaintiff brings claims for negligence (Count IV), conversion (Count V), and strict liability (Count VI) against Chase Bank. (Doc. No. 12.) Chase Bank moves to dismiss all claims. (Doc. No. 35.) The Court addresses each claim in turn below.

#### 1.    Count IV: Negligence

First, Plaintiff claims that Chase Bank negligently, carelessly, improperly, recklessly, and/or with reckless indifference to the right of and property of TESD, illegally breached its

---

[4] Interestingly, Plaintiff failed to attach the contract to the Complaint, but PLGIT attached it to its motion to dismiss. (Doc. No. 34-5.)

business practices, policies, and procedures, breached its duty not to honor counterfeit/forged checks and not to permit or to allow an unauthorized substantial payment out of TESD's account. (*Id.* at ¶ 70.)  As a result, these breaches caused substantial economic injury to TESD and its subrogee, Utica.  (*Id.* at ¶ 71.)  Chase Bank moves to dismiss asserting that the Pennsylvania Commercial Code ("PUCC") preempts the claim for common law negligence.  (Doc. No. 32-1 at 4.)  In opposition, Plaintiff argues that Chase Bank fails to meet its burden to show that the PUCC preempts Plaintiff's claim, or, alternatively, that it is too premature to make this determination.  (Doc. No. 35 at 3.)

We agree with Chase Bank.  The PUCC "displaces common law claims when two circumstances are satisfied: (1) the Code supplies a comprehensive remedy to the claim and (2) reliance on the common law rather than the Code would thwart the Code's purposes." *Reg'l Produce Coop. Corp. v. TD Bank, N.A.*, 645 F. Supp. 3d 394, 421 (E.D. Pa. 2022) (citing *H.G. Litig. Grp., LLC v. TD Bank, N.A.*, 598 F. Supp. 3d 249, 251–52 (E.D. Pa. 2022)) (finding the PUCC preempted a common law negligence claim against the payor bank for drafting checks against plaintiff's funds without authorization); *see also N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345 (3d. Cir. 1982.)

As relevant here, "[c]ourts in this Circuit have held that the [PUCC] 'displaces any negligence actions that are based on wrongfully paying a negotiable instrument to a person not entitled to enforce the instrument or receive payment.'" *Naidu v. PNC Bank, Nat'l Ass'n*, 729 F. Supp. 3d 467, 473 (E.D. Pa. 2024) (citing *Gress v. PNC Bank, N.A.*, 100 F. Supp. 2d 289, 292 (E.D. Pa. 2000) (quoting 13 Pa. Stat. & Cons. Stat. § 3420); *see also Rideout v. Wells Fargo*, No. 21cv3326, 2021 WL 4902344, at *14–15 (E.D. Pa. Oct. 21, 2021) (determining that plaintiff's negligence claim arising from Wells Fargo's processing of unauthorized checks is displaced by

the PUCC); *Mack v. CTC Ill. Tr. Co.*, No. 4cv00083, 2004 WL 1631398, at \*4–5 (E.D. Pa. July 20, 2004) (finding that a negligence claim premised on wrongful payment of a check to a person not entitled to receive payment is preempted by the PUCC).  The Court finds the reasoning in these cases persuasive.  Here, like, *Naidu*, Plaintiff's claim is predicated on Chase Bank "wrongfully paying a negotiable instrument [the counterfeit/forged check] to a person not entitled to enforce the instrument or receive payment [Ms. LaFoucade]."  *Naidu*, 729 F. Supp. 3d at 473; (*see also* Doc. No. 12 at ¶ 19 (Chase Bank "breached [a] duty not to honor counterfeit/forged checks and not to permit or to allow an unauthorized payment out of TESD's account.")).  Plaintiff points to no case law that contradicts this presumption of PUCC preemption.[5]

And the PUCC "expressly provides a remedy for plaintiffs who are harmed by a bank's negligence in transactions involving fraudulent checks."  *H.G. Litig. Grp.*, 598 F. Supp. 3d at 253 (*see* 13 Pa. Stat. & Cons. Stat. § 3404(d) ("[T]he person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.")).  The Code's "remedial scheme is comprehensive because the Code

---

[5] Plaintiff's reliance on *Elkin Valley* and *Menichini* is unconvincing.  *Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F. Supp. 3d 293, 346 (W.D. Pa. 2024); *Menichini v. Grant*, 995 F.2d 1224 (3d Cir. 1993).  *Elkin Valley* involved a PUCC Article 4A-207, Misdescription of Beneficiary claim relating to a wire transfer; that is factually distinct from the situation here.  748 F. Supp. 3d 293, 346 (W.D. Pa. 2024) ("Article 4A of the [P]UCC . . . is the sole vehicle under which to bring any claim regarding a wire transfer")  Here, Plaintiff brings suit in connection with a counterfeit/forged check, which is governed by [P]UCC Articles 3 and 4.  *See Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 779 (E.D. Pa. 2008) (stating that "Article 3 of the [[P]UCC] regulates negotiable instruments, including checks and the check collection process. Article 4 defines the rights between parties with respect to bank deposits and collections involving banks located in Pennsylvania."); *Compare* 13 Pa.C.S. § 4A101, *et seq.* ("Funds Transfers"), *with* 13 Pa. Stat. & Cons. Stat. § 3101, *et seq.* ("Negotiable Instruments") and 13 Pa. Stat. & Cons. Stat. § 4101, *et seq.* ("Bank Deposits and Collections").

And in *Menichini*, Plaintiff brought a claim for conversion, rather than negligence, and the court in that case does not engage in any discussion of PUCC preemption because common law negligence was not asserted as a claim or defense.  *Menichini*, 995 F.2d at 1229.

addresses each possible form of check fraud and tailors a different remedy to each situation." *H.G. Litig. Grp.*, 598 F. Supp. 3d at 253 (citing 13 Pa. Stat. & Cons. Stat. § 3403 (addressing unauthorized signatures); *id.* § 3404 (addressing imposter and fictitious payees); § 3405 (addressing check fraud by an employee); *id.* § 3407 (addressing fraudulently altered checks)); *see also Sebastian v. D&S Exp., Inc.*, 61 F. Supp. 2d 386, 391 (D.N.J. 1999) ("Here, § 3404 provides the plaintiff[] with a comprehensive remedy applying a standard very similar to common law negligence, for if a party 'fails to exercise ordinary care in paying or taking the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.'").

Therefore, "[a]llowing the common law to disturb this intricate and delicately crafted remedial scheme would thwart the Code's purpose of placing the risk of loss in these transactions on the party best situated to prevent the loss." *H.G. Litigation Group*, 598 F.Supp at 253; *see also Env't Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 715 (E.D. Pa. 2010). Thus, Plaintiff's claim for negligence (Count IV) against Chase Bank is dismissed.

### 2.   Count V: Conversion

Second, Plaintiff asserts a claim for conversion against Chase Bank, which we will also dismiss. (Doc. No. 12 at 6.) Chase Bank argues this claim fails as a matter of law under PUCC Section 3420, which states "an action for conversion of an instrument *may not be brought by the issuer*." 13 Pa. Const. Stat. § 3420(a) (emphasis added). Chase Bank claims that because TESD was the "issuer" and/or "drawer" of the counterfeit/forged check, Plaintiff, as subrogee for TESD, cannot bring a claim for conversion under PUCC Section 3420 against Chase Bank in its role as depository bank. (Doc. No. 32-1 at 7.) In opposition, Plaintiff argues that it has pleaded a plausible conversion claim pursuant to PUCC Section 3420 because (1) the instrument

(forged/counterfeit check) was taken by transfer; (2) from a person not entitled to enforce the instrument (Ms. LaFoucade); and (3) Chase Bank made payment on the instrument for a person not entitled to enforce the instrument or receive payment.  (Doc. No. 35 at 8–9.)

Under PUCC Section 3420(a), "[a]n action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee."  13 Pa. Stat. & Cons. Stat. § 3420(a).  An "issuer" is a "maker or drawer" of an instrument.  *Id.* § 3105(c).  A "drawer" is the "person who signs or is identified in a draft as a person ordering payment," and a "maker" is a "person who signs or is identified in a note as a person undertaking to pay."  *Id.* § 3103(a).  Comment one to the statute explains that, "[t]here is no reason why a drawer should have an action in conversion.  The check represents an obligation of the drawer rather than property of the drawer.  The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check."  *Id.* § 3420, cmt. 1.

"Repeatedly, courts have dismissed statutory conversion claims where an agent of the issuer, whose corporate name appears at the top of each check, signs the check on behalf of the issuer."  *Reg'l Produce Coop. Corp*, 645 F. Supp. at 394 (citing *Sebastian*, 61 F. Supp 2d at 391.) ("As derivatives of the corporation, the plaintiff must stand in the shoes of the corporation, in this case, the issuer.  Accordingly, the plaintiff as issuers, makers or drawers, of the checks cannot maintain the conversion action because such is barred by 13 Pa.C.S.A. § 3420(a)"); *Shamis v. Citizens Bank, et al.*, No. 0973, 2007 WL 2173837 (Pa. Com. Pl. July 10, 2007) ("Citizens was the depository bank; thus, plaintiff's claim for conversion is barred under 13 Pa. Cons. Stat. § 3420 ([P]UCC Section 3-420)") (citing *Guardian Life Ins. Co. of Am. v. Weisman*, 223 F.3d 229, 238 (3d Cir. 2000) ("Unlike a payee who had possession of a check, a drawer has

9

no doctrinal basis for claiming conversion: one's own check is an obligation, not a right.  It is a liability that cannot be stolen, not an asset that can be stolen."  (internal citation omitted)).

Here, the Court agrees with Chase Bank that TESD was the "issuer" and/or "drawer" of the counterfeit/forged check.  (*See* Doc. No. 12 at ¶ 14 ("TESD issued a check, ending in x277"); *id.* at ¶ 19 ("The counterfeit/forged check "was [] deposited into Ms. LaFoucade's bank account at JP Morgan Chase Bank").)  And because TESD could not maintain a claim for conversion under PUCC Section 3420 against Chase Bank, Plaintiff, as subrogee for TESD, cannot maintain such a claim.  (Doc. No. 32-1 at 7.)  *See Citizens Bank of Pa. v. Chevy Chase Bank*, No. 03cv5208, 2004 WL 875499, at *2 (E.D. Pa. Mar. 22, 2004) (holding that because PUCC section 3420(a) "bars issuers of instruments from bringing an action for conversion[,]" a claim for common law conversion would "thwart the purpose of the [P]UCC"); *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 780 (E.D. Pa. 2008) ("Thus, an action based on the deprivation of property, where that property is an instrument, is subsumed and displaced by section 3420.").

As such, Plaintiff's claim for conversion (Count V) against Chase Bank is dismissed.

### 3.      Count VI: Strict Liability

Third, Plaintiff asserts a claim for strict liability against Chase Bank pursuant to PUCC Section 4401.  (*See* Doc. No. 12 at ¶ 89 ("Pursuant to 13 Pa. C.S.A. § 4401, Defendant Chase Bank is strictly liable for charging against TESD's account because the check, by virtue of being counterfeit, was not properly payable.").)  Chase Bank moves to dismiss this claim as a matter of law, arguing that because TESD is not a Chase Bank customer, Plaintiff has no standing.  (Doc. No. 32-1 at 8.)  In response, Plaintiff concedes that "neither it nor [TESD] were customers of Chase Bank at the time material hereto" but nonetheless argues that "[P]laintiff has pled sufficient factual allegations in support of its Section 4401 strict liability action" to survive a

motion to dismiss.  (Doc. No. 35 at 10.)  The Court disagrees.

PUCC Section 4401, titled, "When a bank may charge account of *customer*," states that a bank may charge against "the account of a *customer* an item that is properly payable from that account."  13 Pa. Stat. & Cons. Stat. § 4401(a) (emphasis added).  PUCC Section 4401(a) further explains that an item is "properly payable if it is authorized by the *customer* and is in accordance with any agreement between the *customer* and the bank."  *Id*.  (emphasis added).  Courts applying PUCC Section 4401 have held that it "allows aggrieved customers to assert claims against banks when banks charge items that are not properly payable against customer accounts." *Env't Equip. & Serv. Co.*, 741 F. Supp. 2d at 713.

Here, Plaintiff cannot maintain a strict liability claim under PUCC Section 4401 against Chase Bank because neither TESD nor its subrogee Utica, is a customer of Chase Bank.  Thus, Section 4401 is inapplicable.  (Doc No. 32-1 at 9.)  Plaintiff even concedes this point.  (Doc No. 35 at 10 ("[P]laintiff concedes that neither it nor the Tredyffrin/Eastown School District were customers of Chase Bank").)  Without citing case law, Plaintiff nonetheless asserts that "Chase Bank's deposit and payment of the counterfeit/forged check to Ms. LaFoucade violated its strict duty to charge the account solely for payable items, and the forged/counterfeit check was not properly payable against [TESD]."  (Doc. No. 35 at 11.)  This claim is baseless.  As such, Plaintiff's strict liability claim (Count VI) against Chase Bank is dismissed.

### B.    PLGIT's Motion to Dismiss

Plaintiff also brings claims for breach of contract (Count VIII) and negligence (Count VII) against PLGIT.  (Doc. No. 12.)  PLGIT moves to dismiss both claims. (Doc. No. 34.)  The Court addresses each claim in turn below.

### 1.    Count VIII: Breach of Contract

Plaintiff's breach of contract claim against PLGIT asserts that "PLGIT had an agreement with TESD wherein PLGIT was responsible for receiving and approving or rejecting 'payable through' drafts presented against TESD's account.  PLGIT failed to reject the draft as counterfeit and as fraudulent and forged." (Doc. No. 12 at ¶¶ 103–05.)  And "[a]s a result, PLGIT breached its contractual obligations resulting in the loss of $365,158.02." (*Id.* at ¶ 106.)  In its motion to dismiss, PLGIT asserts that Plaintiff's claim fails to state a claim under the express terms of the parties' contract.  (Doc. No. 34-3 at 9.)  In response, Plaintiff spills much ink trying to assert that it has met the notice pleading standard articulated in Federal Rule of Civil Procedure 8(a)(2) for this claim to proceed past the pleading stage—without acknowledging the plain language of the parties' contract.  (Doc. No. 34 at 22.)

Under Pennsylvania law, to establish a breach of contract claim, a plaintiff must prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (cleaned up); *see also Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. Ct. 2003).  Here, Plaintiff's Amended Complaint does not include any discussion of the "essential terms" of the contract between the parties or how PLGIT allegedly breached an essential term. *Clapps v. State Farm Ins. Cos.*, 447 F. Supp. 3d 293, 297 (E.D. Pa. 2020); *see also Plouffe v. Bayview Loan Servicing, LLC*, No. 15cv5699, 2016 WL 6442075, at *9 (E.D. Pa. Oct. 31, 2016) (finding a breach of contract claim "fatally threadbare" in part because plaintiff "must allege the essential terms of the contract" and did not do so).  Instead, the Amended Complaint devotes "a single sentence" to the vague contention that PLGIT was "responsible for receiving and approving or rejecting 'payable through' drafts." (Doc. No. 34-3 at 10); *see Andrichyn v. TD*

12

*Bank, N.A.*, 93 F. Sup. 3d 375, 383 (E.D. Pa. 2015) ("Plaintiff fail[ed] to cite any provision in the Account Agreement that would create this obligation.").

A review of the contract shows that contention is directly contradicted by the express terms of the parties executed contract, which PLGIT—not Plaintiff—attached to its motion to dismiss. (*See* Doc. No. 34-4.)[6] The CWA, dated December 5, 2023, and executed by TESD, expressly provides that:

> **(1) The Investor [TESD] is responsible for designating check verifiers and reviewing checks** presented against the account in accordance with the terms and conditions contained in the [PLGIT] Information Statement … (2) the Investor [TESD] shall notify PLGIT Client Services of any checks that should not be paid by 12pm on the business day following the presentment of checks; (3) no action taken by the Investor [TESD] by 12pm on the business day following the presentment of checks shall be understood as an affirmation that the checks presented should be paid; (3) in the event the Investor [TESD] fails to review presented checks and payment occurs, **the Investor [TESD] will be responsible for any loss of funds**. . .

(Doc. No. 34-5 at 2.) (emphasis added). Based on the express terms of the contract, the Court agrees with PLGIT that the contract "clearly states that *TESD*—not PLGIT—was responsible for reviewing checks written on its account and for notifying PLGIT if any of those checks should not be paid." (Doc. No. 45 at 6 (emphasis added).) Here, the facts alleged by Plaintiff do not include any allegations that TESD notified PLGIT that the counterfeit/forged check at issue should not be paid. Because the express terms of the CWA render TESD liable for "any loss of funds" if TESD fails to tell PLGIT not to honor a check, Plaintiff has not alleged that PLGIT breached a duty owed under the contract. Accordingly, TESD cannot maintain a breach of contract claim against PLGIT.

---

[6] The Court may consider the contract in deciding PLGIT's motion to dismiss because it is integral to Plaintiff's breach of contract claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### 2.     Count VII: Negligence

Plaintiff also brings a negligence claim against PLGIT, asserting that PLGIT had a duty to exercise reasonable care in preserving TESD's money, by ensuring that the check at issue was not forged or counterfeited by a third party.  (Doc. No. 12 at ¶ 99.)  Plaintiff claims that PLGIT negligently, carelessly, improperly, recklessly, and/or with reckless indifference to the right of and property of TESD, illegally breached its business practices, policies, and procedures, breached its duty not to honor counterfeit/forged checks and not to permit or to allow an unauthorized substantial payment out of TESD's account.  (*Id.* at ¶¶ 99, 100.)  As a result, these breaches caused substantial economic injury to TESD and its subrogee, Utica.  (*Id.* at ¶ 101.)  PLGIT asserts that Plaintiff's negligence claim is barred by the gist of the action doctrine and the economic loss doctrine.  (Doc. No. 34-3 at 10.)  In response, Plaintiff argues that the doctrines do not apply to Plaintiff's claims. (Doc. No 43 at 13.)  Again, the Court agrees with PLGIT and finds that the gist of the action doctrine bars the Plaintiff's negligence claim.[7]

"The gist of the action doctrine provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action . . . although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'"  *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (citing *Bruno. v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014)).  "[T]o evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract."  *Id.* (internal citation omitted).

---

[7] Because we find that the gist of the action doctrine bars Plaintiff's claim, the Court does not address PLGIT's economic loss doctrine argument.

"In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort . . . is not controlling." *Id.* "Put simply . . . to determine whether an action is barred by the gist of the action doctrine, we must examine the factual allegations and ask, '[w]hat's this case really about?'" *Id.* (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.,* 602 F.3d 541, 550 (3d Cir. 2010).

Here, the Court agrees with PLGIT that "the alleged duty owed by PLGIT to TESD derives solely from the 'check writing services' that PLGIT offered to TESD under the applicable contract." (Doc. No. 34-3 at 11.) As PLGIT asserts, Plaintiff's Amended Complaint pleads "no independent duty owed by PLGIT other than its contractual relationship with TESD." (*Id.*; *see also* Doc. No. 12 at ¶ 34 (alleging that "it was PLGIT's responsibility to determine whether the instrument is payable or should be rejected" and "PLGIT was required to appoint a person . . . responsible for reviewing and approving or rejecting 'payable through' drafts presented against TESD's account. PLGIT failed to reject the draft as fraudulent")). Plaintiff's Amended Complaint does not point to any "separate societal duty" beyond the contractual relationship between Plaintiff and PLGIT. *Downs*, 639 Fed. App'x at 820. Applying the lessons from *Downs*, the Court finds that this case is "really about[]" the duties of PLGIT under PLGIT's contract with TESD. *Id.* As such, the gist of the action doctrine bars Plaintiff's claim for negligence. *See Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 387 (3d Cir. 2004) ("The gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and [the defendant] created the duties that the [defendant] allegedly breached.")).

## V.    CONCLUSION

For the reasons set forth above, Chase Bank and PLGIT's motions to dismiss are

15

granted.[8]  An accompanying Order follows.

---

[8] In the event that the Court dismissed Plaintiff's claims against Chase Bank and PLGIT, Plaintiff seeks leave to amend Counts IV, V, VI, VII, and VIII of their Amended Complaint. (Doc. No. 35 at 11; Doc. No. 43 at 22.)  A court should grant leave to amend unless there is one or more of: "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Id.* (citing *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017)); *see also Hrkach v. Samsung Elecs. Am., Inc.*, No. 24cv6837, --- F. Supp. 3d ---, 2026 WL 309488, at *6 (E.D. Pa. Feb. 5, 2026) (Fed. R. Civ. P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires.").  Here, amendment is inappropriate for two reasons.  First, leave to amend would be futile because Plaintiff's claims are barred by the PUCC and the express terms of the PLGIT-TESD contract.  And Plaintiff's requests for leave to amend does not provide the Court with any "additional facts it could include that would cure the deficiencies alleged by [Defendants] and identified by the Court herein." *Brown v. Agway Energy Servs., LLC*, 328 F. Supp. 3d 464 (W.D. Pa. 2018), *aff'd,* 822 F. App'x 100 (3d Cir. 2020) ("[T]he Court is at a loss for what additional facts Plaintiff could plead that would overcome the deficiencies in his Complaint; therefore, leave to amend is futile.").  Second, leave to file a second amended complaint would also be highly prejudicial to Chase Bank and PLGIT given the late stage of discovery in this case.  (*See* Doc. No. 46.)  Thus, the Court will not permit Plaintiff further leave to amend.